THE STATE, EX REL. CORRIGAN, PROS. ATTY., APPELLEE, *v.* HENSEL, APPELLANT.

(No. 38908—Decided April 21, 1965.)

Mr. *John T. Corrigan,* prosecuting attorney, and Mr. *Frederick W. Frey,* for appellee.

Messrs. *Berkman & Gordon* and Mr. *Joshua J. Kancelbaum,* for appellant.

HERBERT, J.   It is not disputed that respondent was duly elected to the Board of Education of Richmond Heights Local School District in November of 1961 nor is it disputed that respondent operated and managed a teachers' placement service agency prior to his election and has continued in that capacity ever since.   The jurisdiction of the Court of Appeals to hear this cause as an original action is not questioned.   The question presented to this court by the record may be stated in this language:

Does the holder of the office of member of a local board of education forfeit his right to such office and clothe a court with jurisdiction in a proceeding in quo warranto to oust him from office, where it is claimed that such office holder *possibly could* or had the *opportunity to commit* an act or acts violative of the law and the duties of the office imposed upon him?

Section 3313.33, Revised Code, is in part as follows:

"* * * No member of the board of education shall have, directly or indirectly, any pecuniary interest in any contract of the board or be employed in any manner for compensation by the board of which he is a member except as clerk * * *."

98

There is no proof or indication of proof in the record that the respondent had any pecuniary interest in any contract of the board or that he was employed in any manner for compensation by the board.

The basic and apparently the sole contention of the relator, as well as the holding of the Court of Appeals, is that there is a conflict of interest between respondent's business as the owner of a teachers' placement agency and his duties as a member of the board of education.

None of those availing themselves of respondent's services has ever been considered for a position in the Richmond Heights School, nor has respondent ever placed the name of any such person before the board of education for employment in any capacity. He has never sought to secure a different placement for any employee of the Richmond Heights School. A revealing comment appears in the opinion of the Court of Appeals, in this language:

"There is also the *possibility* that respondent, for monetary reasons, *could* seek to replace a competent employee of the Richmond Heights School System in another school system." (Emphasis added.)

The superintendent of schools testified that the respondent did not have access to the files of the teachers other than those that were submitted to the entire board for consideration.

The following quotation is from the testimony of the respondent.

"Q. By having access to the personnel and salary records of the Richmond Heights Board of Education you could, if you so desired, use that information in said board records in your private business, couldn't you?

"* * *

"A. I could, but I wouldn't because I don't need them. I already have all the information I need and all the business I can handle.

"Q. Have you ever done this? A. *I have never done so and never will.*

"Q. If you could find a better job for some Richmond Heights Board of Education employee, you could induce or try to induce that employee to leave Richmond Heights and take a

better job and collect your fee for getting that job, couldn't you? A. Sure. *I could take a high-power rifle and shoot somebody down on the street. I wouldn't think of doing that any more than I would that.*

"Q. And the question? A. I wouldn't, because I couldn't think of it.

"Q. You could do it, if you wanted? A. I could shoot somebody down the street if I wanted to, but I wouldn't think of it." (Emphasis added.)

Under the "could" or "possibility" doctrine, few public officials could remain in office even though there had been no dereliction of duty.

The law does not punish an officeholder for what he "could do" or where there was a "possibility" or opportunity to commit some wrongful act. If a member of a school board should be subject to removal from office by reason of possibilities, then membership on boards of education would be denied to members of many professions, vocations and occupations such as contractors, merchants, doctors, dentists, automobile and truck sales agencies, materialmen, various branches of insurance and a host of other callings, for the simple reason that, as a member of the board of education, each by reason of his private vocation could possibly have an interest in procuring a contract or financial favor from the board of education and school officials.

*State, ex rel. Schorr,* v. *Viner et al., Civil Service Comm.,* 119 Ohio St. 303, in the first paragraph of the syllabus, says:

"Statutes or ordinances forfeiting the official position of an incumbent are penal in their nature, should be strictly construed and should not have their scope extended so as to include offenses not clearly within their provisions."

It is clear from the record that the respondent, as a former teacher and as one possessed of considerable information about the management of schools, vigorously criticized the school system of Richmond Heights in news media, public addresses and other means of communication. He was referred to as "a disruptive influence." However, as the Court of Appeals pointed out, the dissention caused by such criticism, together with the use of our constitutional rights of free speech, is not material to the issue here at bar.

*State, ex rel. Lease, Pros. Atty.,* v. *Turner,* 111 Ohio St. 38, at page 45, reads:

"The law does not look with favor upon declaring a forfeiture in an office to which one has been elected in a legal manner," and "the people by their votes, determine their choice of officers, and they should not be robbed of the fruits of such choice for slight or insufficient reasons * * *."

An elective public official should not be removed except for clearly substantial reasons and conclusions that his further presence in office would be harmful to the public welfare.

Section 2733.01, Revised Code, reads:

"A civil action in quo warranto may be brought in the name of the state:

"(A) Against a person who * * * unlawfully holds or exercises a public office, civil or military * * * within this state * * *;

"(B) Against a public officer, civil or military, who does or suffers an act which, by law, works a forfeiture of his office * * *."

The record fails to disclose that the respondent affirmatively or otherwise committed any act or acts in violation of law or violative of his oath of office.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*


Taft, C. J., Zimmerman, Matthias, O'Neill, Schneider and Brown, JJ., concur.